Linton K. **MORDECAI**, Jr., Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 21943.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 11, 1969.

Decided Oct. 7, 1969.

Certiorari Denied March 9, 1970.
See 90 S.Ct. 1098.

See also D.C., 252 F.Supp. 694.

---

**1134**

Mr. Paul Bender, Washington, D. C. (appointed by this court), for appellant.

Mr. Robert S. Bennett, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, and Earl J. Silbert, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and BURGER, * and LEVENTHAL, Circuit Judges.

BAZELON, Chief Judge:

In 1961 the Juvenile Court waived its "original and exclusive jurisdiction"[1] over the appellant, who was then 16 years old. Five years later, after his conviction for rape and assault with intent to rob became final, the Supreme Court held in Kent v. United States[2] that a juvenile facing waiver deserved a hearing and the assistance of counsel. The appellant received neither in 1961. This appeal from a denial below of his motion for relief under 28 U.S.C. § 2255 (1964) requires us to decide, among other questions, whether Kent applies retroactively to invalidate the waiver and subsequent conviction.

I

The intractability of the retroactivity issue and the apparent lack of consistency among decided cases are an inevitable consequence of the nature of the task. Several factors are of obvious importance in determining whether a new rule should be retroactively applied. Unfortunately, the criteria too often point in opposite directions, thereby requiring the court to balance opposing considerations.

The Supreme Court, despite the dissatisfaction of some of its members,[3] has re-

---

* Judge Burger did not participate in the disposition of this case.

1. See 11 D.C.Code § 1551 (1967).

2. 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

3. See, e. g., Desist v. United States, 394 U.S. 244, 245, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) [denying Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1968), retrospective effect] from which Justices Douglas, 394 U.S. at 255, 89 S.Ct. 1030, Harlan, id. at 256, 89 S.Ct. 1030, and Fortas, id. at 269, 89 S.Ct. 1048, dissented, and which received Justice Black's concurrence, id. at 254, 89 S.Ct. 1048, only because he had dissented in Katz and not because of any agreement with the majority's retroactivity doctrine. See Linkletter

lied upon a three-pronged analysis in deciding whether particular decisions should apply retroactively: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." [4] This catalogue provides a framework to approach the question at hand—the retroactivity *vel non* of *Kent*—but cannot contribute a mechanical answer.

The purpose of the standards announced by *Kent* provides a powerful argument for retroactive application. Whether the right to a hearing with counsel before waiver arises from the statute or the Constitution,[5] there can be no doubt of the importance of counsel to insure the "full investigation" required in a waiver proceeding.[6] We have often stressed the need whenever a waiver is contemplated for a thorough examination of the juvenile, his background and alternative strategies for rehabilitation short of adult criminal treatment.[7] Experience demonstrates that the youth and his parents—when they are available—cannot be counted upon to present the case for juvenile treatment incisively and intelligently. Within our judicial system, we consistently rely upon counsel to marshal facts, present arguments and explore alternatives.

The essentiality of representation by counsel to justice in the individual case has led the Supreme Court to conclude that many of its decisions dealing with this Sixth Amendment right should be retroactive. From preliminary hearing [8] to arraignment [9] to trial [10] and on to ap-

---

v. Walker, 381 U.S. 618, 640, 85 S.Ct. 1731, 14 L.Ed.2d 601 (dissenting opinion of Black & Douglas, JJ.).

4. Desist v. United States, 394 U.S. 244, 245, 249, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969). Although Judge Leventhal claims to be disagreeing with me (*see* his concurrence *infra*), his real dissatisfaction seems to be with the retroactivity positions of both majority and dissenters (*see* note 3 *supra*) of the Supreme Court. His speculation about who is "readier" than who to do what may puzzle the reader, as it does me.

5. The Supreme Court concluded in *Kent* that the statute governing waivers "read in the context of constitutional principles" requires a hearing with counsel before waiver. 383 U.S. at 557, 86 S.Ct. at 1255. The uncertainty thus created whether the decision rooted in statutory or constitutional rights does not, however, affect the cognizability of the appellant's claim. The jurisdiction of the District Court to convict Mordecai depended upon a valid waiver. If *Kent* invalidates the waiver in this case, the trial court was accordingly "without jurisdiction to impose * * * sentence," regardless of whether the "sentence was imposed in violation of the Constitution * * *." 28 U.S.C. § 2255 (1964).

6. 11 D.C. § 1553 (1967) provides in relevant part:

When a child 16 years of age or over is charged with an offense which if committed by a person 18 years of age or over is a felony, or when a child under 18 years of age is charged with an offense which if committed by a person 18 years of age or over is punishable by death or life imprisonment, a judge may, *after full investigation, waive jurisdiction* and order the child held for trial under the regular procedure of the court which would have jurisdiction of the offense if committed by a person 18 years of age or over.

7. *See, e. g.,* Haziel v. United States, 131 U.S.App.D.C. 298, 404 F.2d 1275 (1968); Black v. United States, 122 U.S.App.D.C. 393, 355 F.2d 104 (1965); Watkins v. United States, 119 U.S.App.D.C. 409, 343 F.2d 278 (1964); Green v. United States, 113 U.S.App.D.C. 348, 308 F.2d 303 (1962); Pee v. United States, 107 U.S.App.D.C. 47, 274 F.2d 556 (1959).

8. Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968), *applying* White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963).

9. Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

10. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

peal,[11] the Court's declarations of the right to counsel have been made retroactive. These stages all hold implications for the "integrity of the fact-finding process" [12] that determines guilt or innocence. A waiver of jurisdiction by the Juvenile Court does not do this, but rather simply sets in motion the terrible wheels of an adult proceeding. But the Supreme Court has recognized that the "integrity of the fact-finding" process is critically important at other stages of the criminal process than those determining guilt. McConnell v. Rhay [13] declared retroactive the decision in Mempa v. Rhay [14] requiring counsel at a sentencing hearing. The waiver hearing certainly calls as loudly for the "guiding hand" of counsel as does the sentencing hearing; indeed, the investigations relevant for each are not entirely dissimilar in scope and subject matter.

The right to counsel at interrogations and at line-ups has not been declared retroactive.[15] For the most part these decisions have been so treated because of the reliance of law enforcement officers on practices previously approved and because of the impact of a retroactive application upon the administration of justice. But the decisions in Escobedo v. Illinois,[16] Miranda v. Arizona [17] and United States v. Wade [18] shared to some extent a distinctive purpose in that the ultimate value at stake was not the regularity of the process but the protection of other interests—the privilege against

self-incrimination in *Escobedo* and *Miranda*; the right to meaningful confrontation at trial in *Wade*. While counsel may have an active role to play in assuring his client's understanding of the right to silence at an interrogation or—more problematically—in encouraging the police to conduct lineups fairly, the meaningful participation of counsel is not so palpably essential to the process as absolutely to demand retroactive application of the new standards.[19] Waiver proceedings, on the other hand, may well rely so heavily upon the forceful advocacy of counsel representing the juvenile that a court cannot content itself that waivers unaccompanied by such representation were preceded by the requisite "full investigation."

While the purpose served by the right to counsel in this context argues for retroactive application of *Kent,* the direction of the second signpost—that of reliance by law enforcement authorities on the old standards—is not so clear. It does appear that in fact the Juvenile Court did not consider either a hearing or the assistance of counsel essential to a waiver proceeding before our decision in Black v. United States,[20] which anticipated by a year the right to counsel authoritatively established in *Kent.* But certainly more than reliance in fact must sometimes be required to justify nonretroactive application of a new standard; the justification for reliance by lower courts must influence the decision. If

11. Smith v. Crouse, 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (1964), *applying* Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

12. Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

13. 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968).

14. 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed. 2d 336 (1967).

15. *See* Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) ; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

16. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964).

17. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694, 10 A.L.R.3d 974 (1966).

18. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

19. As the court observed in *Stovall,* 388 U.S. at 298–299, 87 S.Ct. at 1971: "[U]nlike cases in which counsel is absent at trial or on appeal, it may confidently be assumed that confrontations for identification can be and often have been conducted in the absence of counsel with scrupulous fairness and without prejudice to the accused at trial."

20. 122 U.S.App.D.C. 393, 355 F.2d 104 (1965).

the new standard appears as a bolt from a clear sky to shatter hitherto solid-seeming precedent, the reliance of lower courts upon old standards is above reproach. If, on the other hand, the new standard has been foreshadowed by earlier decisions which would have allowed a lower court paying sensitive attention to trends in the law to anticipate the latest ruling, then non-retroactive applications based only upon the fact that lower courts have clung woodenly to the old, eroded standard would simply "validate this kind of footdragging."[21]

This court did hold in 1960 that the Juvenile Court was not required to hold a hearing to waive its exclusive jurisdiction,[22] and there was little reason for the Juvenile Court to suspect erosion of this holding before the decision in *Kent*. But there was no established "old standard" approving the practice of waivers without counsel. The importance of counsel to the fairness of criminal proceedings was well established, at least in federal courts, long before this waiver occurred in 1961. Moreover, this court had held in 1956 that the assistance of counsel was required in juvenile proceedings to determine involvement in unlawful activities.[23] Shioutakon v. District of Columbia rested upon our interpretation of the presumed legislative intent of Congress reached in the light of constitutional principles, although the statute itself "in terms neither recognizes or withholds such assistance."[24]

Faced with a similar silence vis-a-vis the assistance of counsel in that part of the statute dealing with waivers, the Juvenile Court might well have suspected

that the juvenile was entitled to an attorney. In this regard *Kent* was not "a clear break with the past."[25] Indeed, in the apparent absence of any earlier case precisely upon point, it is not altogether clear that *Kent* constituted a change in the law.[26]

The third factor to be considered, that of the effect on the administration of justice of a retroactive application of the new standard, may encompass a raft of miscellaneous considerations. Upon occasion the Supreme Court has seemingly shied from applying decisions retroactively because a high proportion of past stock criticism of such reasoning is that convictions would be affected.[27] The retroactivity should depend upon the risk of injustice to the individual convicted under a discarded standard rather than upon the total number of cases where injustice may have occurred. There is merit to this argument. At the core of the retroactivity problem, we must in the individual case balance our fear of permitting an erroneous conviction to stand against our reluctance to vacate a conviction that may be correct. Totalling up all the individual cases merely multiplies the weights on each side of the scales by an equal factor, and accordingly should not alter the result of the balancing exercise.

But the problem is more complicated. When a decision in the criminal law is made retroactive, the consequence is not to free all whose convictions are affected. Normally new hearings or new trials will be held in some or all cases. If retroactive application would affect a high proportion of convictions, the new pro-

---

**21.** Desist v. United States, 394 U.S. 244, 276, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (dissenting opinion of Fortas, J.).

**22.** Wilhite v. United States, 108 U.S.App. D.C. 279, 281 F.2d 642 (1960).

**23.** Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 236 F.2d 666, 60 L.R.R.2d 686 (1956).

**24.** *Id.* at 374, 236 F.2d at 669.

**25.** Desist v. United States, 394 U.S. 244, 248, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969).

**26.** *Cf. id.* at 258–259, 89 S.Ct. 1048 (dissenting opinion of Harlan, J.).

**27.** *See, e. g.,* DeStefano v. Woods, 392 U.S. 631, 634 S.Ct. 2093, 20 L.Ed.2d 1308 (1968); Stovall v. Denno, 388 U.S. 293, 300, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Johnson v. New Jersey, 384 U.S. 719, 731, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Tehan v. United States ex rel. Shott, 382 U.S. 406, 419, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).

ceedings thus necessitated may overload judicial facilities and outstrip resources.

The Government has not informed the court in this case how many individuals a decision to make *Kent* retroactive would affect, although such information is of obvious relevance when the argument is raised, as it has been by the Government, that "to give *Kent* retroactive effect might have a significantly disruptive effect on the administration of justice." In the absence of assistance from the Government, we must estimate for ourselves the likely impact of such a decision. The relative infrequency of waivers from the Juvenile Court to the District Court even before the decision in *Kent* renders it improbable that vast numbers of young offenders waived without a hearing or representation by counsel are still in custody.[28]

In evaluating the effect on the administration of justice of a decision to apply *Kent* retroactively, however, we must consider not only the number of waivers affected, but the availability of an adequate remedy at this late date for those improperly waived. We find the latter consideration decisive in this case. When a new trial is required by the retroactive application of a new standard, both the individual and the state may be handicapped by the disappearance of witnesses and other evidence over time. Often these difficulties must be faced. But their magnitude is a valid consideration in determining whether to make a decision retroactive.[29]

In this case the passage of time has made an appropriate remedy not merely inconvenient or even impracticable, but impossible. If the waiver in this case was improper because the appellant enjoyed neither the assistance of counsel nor a hearing, the correct remedy would

be a new waiver hearing to determine whether the original decision by the Juvenile Court to waive its jurisdiction was correct. Since the appellant—and most others similarly situated—is now over 21 years of age, the new proceedings would have to take place in the District Court.

In Haziel v. United States,[30] which involved a challenge to a waiver by a youth still less than 21, we acknowledged:

> The Juvenile Court may well decide that a hearing at this late date to determine whether * * * waiver would have been proper more than two years ago is so artificial as to be meaningless. Certainly we cannot gainsay the difficulty of determining what rehabilitative strategy might then have worked, and whether resources were then available to implement any such strategy.

The waiver in this case occurred eight years ago, and a new waiver hearing would be exponentially more artificial than in *Haziel.* Even more important, however, is the fact that no remedy is now available if the decision to waive jurisdiction in 1961 was substantively incorrect. The appellant is now 24. He is, in simple fact, no longer a juvenile. Even if nonpunitive rehabilitation in the juvenile process would have been the proper path in 1961, society can no longer offer what was then, rightly or wrongly, denied.[31]

■ In short, the appellant presents a forceful claim that the absence of counsel and a hearing at the time of his waiver must seriously undermine our confidence in the reliability of the process that led to his trial in an adult court. Claims of no greater force have led the Supreme Court to apply other decisions dealing with the right to counsel retro-

---

28. According to the Annual Statistical Reports of the Juvenile Court of the District of Columbia, there were 497 juveniles waived between fiscal years 1960 and 1966, an average of 71 a year.

29. *See, e. g.,* Linkletter v. Walker, 381 U.S. 618, 637, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

30. 131 U.S.App.D.C. 298, 305, 404 F.2d 1275, 1282 (1968).

31. *Cf.* Tehan v. United States ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).

actively, even in circumstances where lower courts had greater cause to rely upon the old standard than we can discover here. But reluctantly, we conclude that the impossibility of according the appellant an adequate remedy today compels our decision that Kent should not be applied retroactively.

## II

The appellant also contends that his plea of guilty was invalid because the trial judge failed to inform him fully of its possible consequences. He argues that although the judge personally determined that he understood that he could be sentenced to either a substantial period of imprisonment or to a period of confinement under the Youth Corrections Act, the appellant was not warned, nor was he aware, that a sentence under the Youth Corrections Act could extend for as long as the period of imprisonment otherwise authorized by law.

■ Although the Supreme Court has recently re-emphasized the duty of the trial judge under Rule 11[32] and under the Constitution[33] to determine personally that a plea of guilty is knowing and intelligent, we cannot agree that the trial judge erred in this case. It may well be true, as the appellant argues, that he reasonably assumed that a sentence under something called the Youth Corrections Act would not extend substantially beyond the period of his youth. But the appellant had no guarantee that he would be sentenced under that Act; the trial judge had the option, as the appellant knew, of sentencing him to a straight term of imprisonment. The appellant received however much to his surprise, a sentence of 20 years under 18 U.S.C. § 5010(c) (1964) rather than the sentence limited to six years under 18 U.S.C. §

5010(b) (1964) that he might have hoped for. He could, however, have received a regular sentence of up to 45 years for the offenses to which he pled guilty. It is true that the appellant will not have the opportunity to earn time off for good behavior under his Youth Act sentence. But if his behavior is in fact good, he is eligible for release under 18 U.S.C. § 5017 (1964).

In these circumstances we find no reason to vacate the conviction. This is not a case such as Pilkington v. United States[34] where the possible sentence under the Youth Corrections Act of which the defendant was not informed exceeded the imprisonment authorized by the applicable criminal statute.

■ Nor do we conclude that the appellant was in any meaningful sense denied his right of allocution under Rule 32 by his ignorance of the possible range of sentences under the Youth Corrections Act to which his guilty plea exposed him, even assuming that such a claim can properly be raised under 28 U.S.C. § 2255.[35]

## III

■ The appellant's final contention is that his confinement to a prison used primarily for the incarceration of adult offenders violates the provision of 18 U.S.C. § 5011 (1964) that "youth offenders [sentenced under the Youth Corrections Act] shall be segregated from other offenders * * *." Whatever the merit of this contention, his claim is not cognizable under Section 2255.

As this court held in Freeman v. United States,

Although a motion under Section 2255 may be utilized to attack a sentence which is "in excess of the maxi-

---

32. *See* McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

33. *See* Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

34. 315 F.2d 204 (4th Cir. 1963); *see also* Marvel v. United States, 380 U.S. 262, 85 S.Ct. 953, 13 L.Ed.2d 960 (1965),

*vacating* 335 F.2d 101 (5th Cir. 1964); Harper v. United States, 368 F.2d 53 (10th Cir. 1966).

35. *See* Andrews v. United States, 373 U.S. 334, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963); Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).

mum authorized by law," this refers only to the sentence as *imposed*, as distinct from the sentence as it is being *executed*. If appellant's sentence is being executed in a manner contrary to law * * * he may seek habeas corpus in the district of his confinement. Section 2255 is not broad enough to reach matters dealing with the execution of sentence.[36]

Affirmed.

LEVENTHAL, Circuit Judge (concurring).

I concur in parts II and III of Judge Bazelon's opinion. As to part I, I concur in the result and in the concluding discussion that the right to counsel and hearing at waiver proceedings established by subsequent decisions is not retroactively applicable to this 1961 waiver determination by the Juvenile Court. Invalidation of the waiver would preclude any appropriate remedy in furtherance of the objective of juvenile rehabilitation which is the predicate of appellant's claim.

In view of the dominant quality of this aspect of the case, I have not undertaken an array and weighing of the various factors that may require careful calibration in some other case involving the retroactive issue.

However, even my more limited approach to the issue requires some delineation of the matters where my view is different from Judge Bazelon's.

The difference between us seems in part a matter of degree and burden of persuasion. I am apparently readier than he to say that new standards in the law should be denied retroactive effect. The opinion in Desist v. United States, 394 U.S. 244, 249, 89 S.Ct. 1030, 22 L.Ed.

2d 248 (1969) points out that retroactivity may be withheld because of the effect on the administration of justice of a retroactive application of new standards. I am apparently readier to give credence to the likelihood of a disruptive effect on the administration of justice even though it has not been quantified or made the subject of formal demonstration.[1]

I am apparently also readier to entertain a denial of retroactivity on the basis of a combination of the possible effect on administration of justice, and the fact of a widespread practice, without inquiring into the exact nature of "reliance" on old standards. *Desist* teaches that "reliance by law enforcement authorities on the old standards" is a factor for consideration. The Supreme Court decisions thus far have involved reliance on authoritative Supreme Court precedents in constitutional law. The question arises, whether such authoritative appellate decisions are necessary to establish the factor of "reliance." I would think not. It seems to me that powerful considerations against retroactivity exist whenever a decision (a) upsets a widespread practice that had evolved, in some matter of administration and procedure, by action of judges, or court officials, or for that matter officials of the executive branch concerned with the administration of justice, and (b) the practice, though not expressly authorized by statute or authoritative decision, was within a zone of reasonableness judged by the standards and understanding of the time. Whether the established or prevailing practice was explicitly sanctioned by authoritative ruling seems to me to be relevant but far from decisive.[2] It would obviously hamstring, rather than further, the adminis-

---

36. 103 U.S.App.D.C. 15, 16–17, 254 F.2d 352, 353–354 (1958).

1. *Compare* Desist v. United States, 394 U.S. 244, 251, 89 S.Ct. 1030, 1035, 22 L. Ed.2d 248 (1969). "We have no cause to doubt that the number of state convictions obtained in reliance on pre-*Katz* decisions is substantial."

2. I note that this court recently refrained from full retroactivity even where an established practice was contrary to the express pronouncement of the Federal Rules of Criminal Procedure. See Gaither v. United States, 134 U.S.App.D.C. 154, 413 F.2d 1061 (April 24, 1969) (On Petitions for Rehearing).

tration of justice to confine the practices of the officials concerned to those actions that have been authoritatively prescribed by appellate decision. The corollary is that the practices these officials develop in order to administer justice, and the judgments and dispositions made in what was reasonably considered a furtherance of the public interest, should be accorded a recognition as de facto reality that survives even in the face of de jure invalidation by decision.

The existence of an established or prevailing practice has revelance both as to the effect retroactive application would have on the administration of justice and as to the assessment of whether the "reliance" factor may be invoked.

In Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), the Supreme Court declined to apply retroactively its ruling in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). *McCarthy* involved Rule 11 of the Federal Rules of Criminal Procedure, which precludes a district judge from accepting a plea of guilty "without first addressing the defendant personally and determining that the plea [was] made voluntarily with understanding of the nature of the charge." It held that the failure of the district judge to comply with the rule required that the guilty plea be set aside and the defendant permitted to plead anew. In *Halliday*, denying retroactivity, the Court referred to the language in Stovall v. Denno, 388 U.S. at 298, 87 S.Ct., at 1970, requiring the weighing of the "prior justified reliance upon the old standard

and the impact of retroactivity upon the administration of justice." *Halliday* did not seek to establish a "justified" reliance on the old standard except by reference to the fact that the failure to apply the terms of the Rules was widespread.[3]

The approach of the Juvenile Court in handling waiver proceedings without hearings and counsel prior to Black v. United States,[4] was sufficiently within the zone of reasonableness in the climate of the time to warrant denying full retroactivity to Black and Kent v. United States.[5] I joined in *Black,* and thought it important to sustain the right of counsel there indicated. But I cannot blink the fact that there was another side to the issue. This pre-1965 approach was no intransigent or rigid foot-dragging adherence to a dusty rule that had been palpably eroded by time and changed conditions. It had substantial support in a decision as then recent as our 1960 ruling in Wilhite.[6] This was not direct authoritative precedent, but as I have already noted, I do not regard this factor as critical.

Underlying my premise that the Juvenile Court's pre-*Black* procedure was within the then zone of reasonableness is the consideration that the absence of counsel at the waiver proceeding did not undermine the integrity of the fact-finding process. The waiver determination was not insignificant; it was an important fork in the road. But it was not a final determination or disposition. The possibility that the absence of counsel resulted in an injustice by the Juvenile

---

3. *See* 394 U.S. at 833, 89 S.Ct., at 1499:

> In *McCarthy* we noted that the practice we were requiring had been previously followed by only one Circuit; that over 85% of all convictions in the federal courts are obtained pursuant to guilty pleas; and that prior to Rule 11's recent amendment, not all district judges personally questioned defendants before accepting their guilty pleas. Thus, in view of the general holding in *McCarthy,* and in view of the large number of constitutionally valid convictions that may have been obtained without full compliance with

> Rule 11, we decline to apply *McCarthy* retroactively. We hold that only those defendants whose guilty pleas were accepted after April 2, 1969, are entitled to plead anew if their pleas were accepted without full compliance with Rule 11.

4. 122 U.S.App.D.C. 393, 355 F.2d 104 (1965).

5. 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

6. Wilhite v. United States, 108 U.S.App. D.C. 279, 281 F.2d 642 (1960).

Court judge who was trying to reach the result he deemed sound in the light of his appraisal of the file does not weigh so heavy in the balance as to offset the mischief that would be generated by erasing the product of a procedure that seemed reasonable in the past and can not now practicably be reconstituted in the mold set for the determinations of today.

To avoid misunderstanding I add that my comments against retroactivity are intended for the kind of retroactivity sought in the case at bar, by motion to apply *Kent* (or *Black*) in a collateral attack on habeas corpus or its statutory equivalent, 28 U.S.C. § 2255, to judgments that became final before 1965. In *Black* we specifically provided for Juvenile Court waiver proceedings for cases where "convictions have not become final." [7]

The kind of retroactivity that opens up final judgments to collateral attack is properly avoided as to judgments that were within the zone of reasonableness of the standards of the time, even though not explicitly validated by authoritative appellate decisional precedent.

___

7. 122 U.S.App.D.C. at 397, 355 F.2d at 108.