**UNITED STATES of America,**

**v.**

**Morris MALINSKY, Defendant.**

**No. 70 Civ. 230.**

United States District Court,
S. D. New York.

March 5, 1970.

Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, New York City, for United States of America; Harold F. McGuire, Jr., Asst. U. S. Atty., of counsel.

H. Elliot Wales, New York City, for defendant.

OPINION

EDWARD WEINFELD, District Judge.

This is a motion pursuant to section 2255 of Title 28 to vacate a judgment of conviction entered May 15, 1957, upon petitioner's plea of guilty while represented by counsel. He was sentenced to a term of imprisonment for three years. The motion is made thirteen years after the plea was entered before the late Judge William B. Herlands, eight months after he passed away, and eleven years after the sentence was served. Since petitioner has completed his sentence, the application is treated as one in the nature of a writ of coram nobis,[1] an extraordinary remedy to be applied only under the most compelling circumstances to correct errors "of the most fundamental character."[2] The record in this matter demonstrates beyond peradventure not only the absence of any such egregious error, but the speciousness of the application.

Petitioner was indicted together with eleven other defendants in a four-count indictment. The first count charged a conspiracy to obstruct interstate commerce in the pickle industry through extortion. The remaining three counts charged the substantive crime of extortion under the Hobbs Act.[3] Petitioner was named in the first three counts. Two trials, one before Judge Murphy and the other before Judge Herlands, resulted in mistrials. After a jury had been empanelled for a third trial, petitioner and eight others offered to withdraw their previous pleas of not guilty and to plead guilty to the conspiracy count. After inquiry by Judge Herlands as to the voluntariness of petitioner's proffered plea, it was accepted on April 5, 1957, and a date set for sentence. However, on April 9, before sentencing, an extensive hearing was conducted by Judge Herlands at which the factual basis of the plea was explored in great detail. Another purpose of this presentence hearing, also accorded to petitioner's codefendants, was to ascertain the degree of culpability of each in order to aid the court in evaluating a fair and just sentence.[4] Statements made by petitioner during his hearing, the transcript of which runs almost 100 pages,[5] form the basis of the present application.

The gist of petitioner's claim is that at that hearing he denied his guilt; the use of violence, threats or extortion; that consequently the plea of guilty entered four days earlier was not a valid plea, and accordingly he is entitled to have it vacated. A reading of the record reveals the speciousness of the contention. Petitioner was represented by his trial counsel, an experienced lawyer in the field of criminal law for almost fifty years. Petitioner himself was not without prior substantial criminal experience. At the hearing, representations by the Assistant United States Attorney, which Judge Herlands was meticulous to assure were supported by prior trial testimony, grand jury testimony and documents in the government's file, indicated a typical case of labor-management racketeering and strong-arm tactics. It was a sordid picture of intimidation of employers and betrayal of employees. Petitioner had been business manager of the New York Pickle and Condiment Dealers Association, purporting to represent a group of pickle peddlers. The Association, in conjunction with two bogus unions, put pressure upon and extorted money from

1. 28 U.S.C. § 1651(a) (1964).

2. United States v. Morgan, 346 U.S. 502, 511–512, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

3. 18 U.S.C. § 1951 (1964).

4. Minutes of Plea, April 5, 1957, at 16; Minutes of Presentence Hearings, April 8–12, 1957, at 1–2; Minutes of Sentencing, May 15, 1957, at 33, 57, 60. A number of defendants had themselves requested the hearings.

5. In all, more than 700 pages of testimony were taken at these presentence hearings.

pickle wholesalers by threats of picketing, price-cutting, assaults and destruction of property. "Sweetheart" contracts were granted to certain employers at the expense of employees, who received no benefits but were saddled with increased union dues, which in turn were siphoned off under the guise of salaries to petitioner and others. Available evidence gave strong support to the prosecutor's contention that petitioner was a, if not the, leading culprit in the illegal conspiracy. Judge Herlands, with painstaking thoroughness, afforded both petitioner and his counsel an opportunity to make explanations in reply to the prosecutor's contentions and to offer mitigating factors for alleged wrongful conduct, or to put such conduct in its proper perspective.[6] In effect, petitioner was accorded the right of allocution even before the date of sentence. Petitioner, in freewheeling explanations, sought to minimize his role in the conspiracy. His counsel also sought to play down the numerous incidents of illegal conduct attributed to petitioner, stating (somewhat naively, in view of the indictment charge): "[A]ll you have here is a technical violation of the Sherman Antitrust law with the conspiracy to interfere with probably some business enterprises."[7] At another point he stated petitioner "has pleaded guilty to the conspiracy count, because the union was interwoven with the Association. Now, if you didn't have that we would not be here at all."[8] However, petitioner's self-serving statements or his counsel's purported explanation of the crime, aimed to minimize petitioner's role in the conspiracy and to secure leniency from the sentencing court, must be viewed against the totality of the hearing record and the purpose of petitioner's statements. So viewed, the record abundantly establishes incident upon incident supporting the conspiracy charge to which petitioner and the codefendants pleaded guilty, and petitioner's dominant role therein.[9]

■ Petitioner did not deny his role as a conspirator. His denials at the hearing related to specific acts charged to other co-conspirators; petitioner conveniently disregards that such acts in furtherance of the common enterprise were also chargeable to him as an admitted member of the conspiracy. The record abundantly establishes that there was a factual basis for petitioner's guilty plea; that he voluntarily acknowledged his guilt with intelligent understanding of the nature of the charge and the consequences of the plea; and that the plea was entered when he was represented by exceptionally experienced and competent counsel.[10] The entry of the plea was a deliberate, reasoned decision by petitioner. To void the guilty plea upon this record would not serve the cause of justice but would make a mockery of the courts.

The motion is denied.

6. Sentencing minutes, at 85.

7. Hearing minutes, at 327.

8. Hearing minutes, at 310.

9. The prosecutor's view that petitioner was the most culpable of the defendants was expressed at the hearing and repeated at the time of sentencing, in the presence of petitioner. After sentence petitioner moved, under § 2255 of Title 28, to vacate his 3-year sentence upon the ground that at the presentence hearing a codefendant in his absence had also expressed the view that he was the most culpable and that the court was influenced by it in imposing sentence; petitioner further contended that the court, in conducting the presentence hearing, had deprived him of the benefit of the services of the probation department. *The motion was denied as frivolous, as indeed it was.*

10. *Cf.* Kercheval v. United States, 274 U.S. 220, 223–224, 47 S.Ct. 582, 71 L. Ed. 1009 (1927).