383 F.Supp. 780 (1974)
Paul Braxton OWENS, Petitioner,
v.
UNITED STATES of America, Respondent.
Civ. No. 74-380.
United States District Court, M. D. Pennsylvania.
October 15, 1974.
*781 F. Lee Shipman, Goldberg, Evans & Katzman, Harrisburg, Pa., for petitioner.
S. John Cottone, U. S. Atty., Michael D. McDowell, Asst. U. S. Atty., Lewisburg, Pa., for respondent.
SHERIDAN, Chief Judge.
Petitioner, then an inmate at the United States Penitentiary at Marion, Illinois, brought this proceeding under 28 U.S.C.A. § 2255, attacking a sentence imposed by this court. Petitioner was permitted to proceed in forma pauperis. Respondent filed a motion to dismiss the petition as moot, since the petitioner had completed the sentence he was attacking and was incarcerated on other unrelated charges. This court denied the motion and ordered the petition construed as an application for a writ of error coram nobis. 28 U.S.C.A. § 1651; United States v. Morgan, 1953, 346 U.S. 502, 74 S.Ct. 1247, 98 L.Ed. 248; Azzone v. United States, 8 Cir. 1965, 341 F.2d 417, cert. denied, 1968, 390 U.S. 970, 88 S.Ct. 1090, 19 L.Ed.2d 1180; Rini v. Katzenbach, 7 Cir. 1967, 374 F.2d 836; United States v. Garguilo, 2 Cir. 1963, 324 F.2d 795; United States v. Malinsky, S.D.N.Y.1970, 310 F.Supp. 523.
For the reasons stated infra, the petitioner's application will be denied.
On March 13, 1962, petitioner entered a plea of guilty to a two count information charging him with knowingly uttering bad checks on a government reservation *782 in violation of 18 U.S.C. § 13. The court sentenced petitioner to two consecutive sentences of one year. Crim. No. 13690. After serving these terms, petitioner was released, and in 1971, in this district he was convicted of bank robbery in violation of 18 U.S.C. § 2113(a) and § 2113(d) and sentenced to 10 years imprisonment. Crim.No. 14727. He was serving a sentence imposed in that case when he filed this application. He is presently on parole.
Petitioner's first contention is that trial in a United States District Court denied him the due process right to a military court-martial. We are urged to hold that if conduct violates both military and civilian laws and is servicerelated, it must be tried in a military court. See O'Callahan v. Parker, 1969, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291. The only possible authority for this proposition is a footnote in Gosa v. Mayden, 1973, 413 U.S. 665, 681 n. 6, 93 S.Ct. 2926, 2936, 37 L.Ed.2d 873:
"There are some protections in the military system not afforded the accused in the civilian counterpart. For example, Art. 32 of the Code, 10 U.S.C. § 832, requires `thorough and impartial investigation' prior to trial, and prescribes for the accused the rights to be advised of the charge, to have counsel present at the investigation, to cross-examine adverse witnesses there, and to present exonerating evidence. It is not difficult to imagine, also, the situation where a defendant, who is in service, may well receive a more objective hearing in a court-martial than from a local jury of a community that resents the military presence."
Petitioner was advised of the charges against him and represented by counsel at the arraignment. There, he waived both the "thorough and impartial investigation" and the rights "to cross-examine adverse witnesses ... and to present exonerating evidence" which would have been afforded him at a civilian trial by pleading guilty to the charges against him.
Without question, the crimes to which petitioner pleaded guilty are cognizable in a court-martial. Petitioner was a member of the Armed Forces at the time of the issuance of the bad checks, and they were cashed on a United States Army Post. "When a serviceman is charged with an offense committed within or at the geographical boundary of a military post and violative of the security of a person or property there, that offense may be tried by a court-martial." Relford v. Commandant, 1971, 401 U.S. 355, 369, 91 S.Ct. 649, 657, 28 L.Ed.2d 102. The vesting of jurisdiction in one court does not automatically divest another court of jurisdiction over the same subject matter, however; concurrent jurisdiction is a well-settled doctrine in our jurisprudence. Petitioner has cited no authority which supports the proposition that the civilian prosecution of a soldier for conduct amounting to a civilian, albeit service-related, offense denies the latter the due process of law.
In Caldwell v. Parker, 1920, 252 U.S. 376, 40 S.Ct. 388, 64 L.Ed. 621, the Court held that the jurisdiction to try and punish for a crime is not vested exclusively in a military court but is concurrent with the civilian tribunal having jurisdiction over the locus criminis. O'Callahan, supra, does not disturb this rule of law, and it is certainly of continuing validity. United States v. Guido, 3 Cir. 1947, 161 F.2d 492; United States v. Hodge, 5 Cir. 1973, 487 F.2d 945; Schmitt v. United States, 5 Cir., 413 F.2d 219, cert. denied, 1969, 396 U.S. 959, 90 S.Ct. 432, 24 L.Ed.2d 423; Kennedy v. Sanford, 5 Cir., 166 F.2d 568, cert. denied, 1948, 333 U.S. 864, 68 S.Ct. 737, 92 L.Ed. 1143; Lucas v. Sanford, 5 Cir. 1944, 145 F.2d 229; Robinson v. United States, 9 Cir. 1949, 175 F.2d 4; cf. Simmons v. United States, M.D.Pa. 1954, 120 F.Supp. 641, 648 n. 12; see also Madsen v. Kinsella, 1952, 343 U.S. 341, 349-350 n. 16, 72 S.Ct. 699, 96 L.Ed. 988.
O'Callahan, supra, cited by petitioner, insofar as is here relevant, stands for *783 the proposition that for non servicerelated crimes, a member of the Armed Forces must be given a civilian "due process" trial. The rationale is that "a court martial is not yet an independent instrument of justice but remains to a significant degree a specialized part of the overall mechanism by which military discipline is preserved." 395 U.S. at 265, 89 S.Ct. at 1686. The suggestion that a court-martial  which is something less than a "due process" trial  should be required to the exclusion of a "due process" trial is not well taken. In fact O'Callahan recognizes that military court proceedings are "in general less favorable to defendants," id. at 265, 89 S.Ct. at 1687, than civilian trials.[1]
Accordingly, jurisdiction was properly exercised by this court.
Petitioner's second contention is that the judgment against him should be vacated due to irregularities in the procedure used by this court in sentencing petitioner at the time of his plea of guilty.
Under the Youth Corrections Act, 18 U.S.C. § 5005 et seq., an alternate system of corrections is provided for younger offenders. The statute, passed in 1950, Act Sept. 30, 1950, c. 1115, § 2, 64 Stat. 1086, is a recognition on the part of Congress that young persons who find themselves at odds with the law may well be best served by a sentence outside the corrections structure applicable to adults. It has been found that socio-psychological factors operate on individuals between their sixteenth and twenty-second years to produce habitual criminals, that these factors are present in an adult prison environment and that a specialized program for young offenders can be more successful in avoiding recidivism in selected cases. Dorszynski v. United States, 1974, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855; H.R.Rep. No. 2979, 1949, 81st Cong., 2d Sess., at 2-3.
Following the entry of a judgment of guilty, in lieu of imposing an adult sentence such as incarceration in a prison, the sentencing court has the power, under the Youth Corrections Act, to order that youths normally between eighteen and twenty-two years of age be placed on probation in lieu of any commitment. 18 U.S.C. § 5010(a). The court is also authorized to order commitment for treatment under the Act. 18 U.S.C. § 5010(b). For the latter event, a specialized program of treatment has been created, intended to carry out the rehabilitative purpose of the Act.
Petitioner's contention that he is entitled to vacation of the judgment against him due to an error in sentencing is incorrect. The appropriate remedy for a sentence found to be inappropriate under the Youth Corrections Act is not to alter the judgment; it is for the sentencing court to reconsider the sentence it has imposed. United States v. Coefield, 1973, 155 U.S.App.D.C. 205, 476 F.2d 1152; United States v. Kaylor, 2 Cir. 1974, 491 F.2d 1133 (en banc); United States v. Dover, 5 Cir. 1974, 489 F.2d 688.
At the time of his conviction, petitioner was certainly eligible for specialized treatment under the Youth Corrections Act. 18 U.S.C. § 5006; 18 U.S.C. § 5010. However, the fact of eligibility does not confer the automatic *784 right to such a sentence. Dorszynski v. United States, supra, 418 U.S. at 433-442, 94 S.Ct. 3042; 18 U.S.C. § 5010. In the only hearings held on the bill which became the Youth Corrections Act, Chief Judge John J. Parker of the United States Court of Appeals for the Fourth Circuit testified:
"The act ... does not interfere with the power of the judge [with respect to sentencing youth offenders] but gives him merely an alternative method of treatment of those people. ... He may still give the youthful offender the punishment prescribed by existing statutes, there is nothing in the bill that prevents that. All that the bill does is to provide that if in his judgment and discretion, he thinks that the offender before the court is one that can be treated with advantage under this bill, he can sentence him under this bill instead of under existing law. . . . "I do not see any possible objection [to the Act]. They say that there are some of those fellows that ought to be given serious punishment notwithstanding their being young and it [the Act] does not prevent their being given serious punishment. Nothing prevents a man from getting 25 years punishment if he deserves it. Nothing prevents him from being executed if he deserves such sentence." Hearings on S. 1114 and S. 2609, 1949, 81st Cong., 1st Sess., at 43-44.
Thus, it is clear that while the trial judge may consider a sentence under the Youth Corrections Act in an appropriate case, Congress has not mandated the requirement for such a sentence for all offenders between the ages of eighteen and twenty-two. The purpose of Congress in passing the Federal Youth Corrections Act was to increase the sentencing alternatives available to federal judges, not to limit their discretion to the newly created options. Dorszynski v. United States, supra, 418 U.S. at 437, 94 S.Ct. 3042; United States v. Bamberger, 3 Cir. 1972, 456 F.2d 1119, 1128-1129 n. 7, cert. denied, 1973, 413 U.S. 919, 93 S.Ct. 3067, 37 L.Ed.2d 1040.
Having determined that utilization of the Youth Corrections Act is discretionary with the trial judge, it is now appropriate to explore the dimensions of such discretion. The long-established authority in the United States is that the sentencing function is vested exclusively in the trial court. Dorszynski v. United States, supra, 418 U.S. at 440, 94 S.Ct. 3042.
"If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute." Gurera v. United States, 8 Cir. 1930, 40 F.2d 338, 340, quoted approvingly in Dorszynski, supra, at ___, 94 S.Ct. 3042. Accord, Gore v. United States, 1958, 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed.2d 1405; Townsend v. Burke, 1948, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690; Blockburger v. United States, 1932, 284 U.S. 299, 305, 52 S.Ct. 180, 76 L.Ed. 306. See also Frankel, Lawlessness in Sentencing, 1972, 41 U.Cinn.L.Rev. 1.
Therefore, if the trial court determines that the appropriate sentence for a young offender is a term of incarceration in an adult institution, and such a sentence is authorized by statute, reviewing courts will not interfere.
Although the foregoing discussion points to the substantive area of a trial judge's sentencing discretion, the Supreme Court has recently announced a procedural standard with regard to the Youth Corrections Act. Under Dorszynski, the sentencing judge must make an affirmative finding that a sentence under the Youth Corrections Act would be of no benefit to an eligible offender. Dorszynski v. United States, supra, 418 U.S. at 443-444, 94 S.Ct. 3042. This marks a change in the law in several circuits, including the Third, where the courts have heretofore held that a "no benefit" finding need not be explicit, but *785 may be implied by the record. Williams v. United States, 3 Cir. 1973, 476 F.2d 970; United States v. Bamberger, 3 Cir. 1972, 456 F.2d 1119, cert. denied, 1973, 413 U.S. 919, 93 S.Ct. 3067, 37 L.Ed.2d 1040; Cox v. United States, 4 Cir., 473 F.2d 334 (en banc), cert. denied, 1973, 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116; United States v. Jarratt, 9 Cir. 1972, 471 F.2d 226, cert. denied, 1973, 411 U.S. 969, 93 S.Ct. 2161, 36 L.Ed.2d 691; United States v. Dorszynski, 7 Cir. 1973, 484 F.2d 849, rev'd, 1974, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855. Contra, United States v. Coefield, 1973, 155 U.S.App.D.C. 205, 476 F.2d 1152 (en banc); United States v. Kaylor, 2 Cir. 1974, 491 F.2d 1133 (en banc); Brooks v. United States, 6 Cir. 1974, 497 F.2d 1059. The law now requires the sentencing judge to state for the record that he has found that an eligible offender would receive no benefit from a sentence under the Youth Corrections Act prior to imposing an adult sentence.
In the case at bar, an explicit "no benefit" finding was not made, Record at 7, United States v. Owens, M.D.Pa. filed April 7, 1962, Crim.No. 13690, although such a finding was implicit. What must now be decided is whether Dorszynski is to be applied retroactively so as to require that such a factual finding now be made.[2]
It is settled that the courts have the power to limit the application of a ruling so as to cause it to operate only prospectively. Gosa v. Mayden, 1973, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873; Michigan v. Payne, 1973, 412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736; Adams v. Illinois, 1972, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202; Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Johnson v. New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; Tehan v. Shott, 1966, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453; Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601; see also Lemon v. Kurtzman, 1973, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151.
In modern cases where the court has been asked to give a recently announced standard only prospective effect, the appropriate analysis has been held to call for the court to "look to the purpose of the ... [new] rule; the reliance placed upon the ... [prior] doctrine; and the effect on the administration of justice of a retrospective application of [the new rule]." Linkletter v. Walker, supra, 381 U.S. at 636, 85 S.Ct. at 1737; accord, Stovall v. Denno, supra; e. g., Michigan v. Payne, supra, 412 U.S. at 51,[3] 93 S.Ct. 1966.
In Michigan, the Court held that the rule announced in North Carolina v. Pearce, 1969, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, should not be applied to a proceeding which took place before the announcement of the new requirement. Similar factors suggest the same result here.
In Michigan, the Pearce requirement (that following a conviction in a second trial after a successful appeal of the first, a judge should not impose a more severe sentence unless he articulates affirmative reasons for such a change) was held not applicable to cases decided prior to Pearce. Analogizing to Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Court in Michigan *786 held the purpose for the sentencing requirement there under consideration to be "prophylactic," "designed to preserve the integrity of a phase in the criminal process," Michigan, supra, 412 U.S. at 53, 93 S.Ct. at 1970, rather than as enumciative of a substantive constitutional right. Similarly in Dorszynski, the Court said:
"Although the [Youth Corrections] Act was not in any way intended to circumscribe the discretion of sentencing courts, it did provide a new sentencing alternative designed to prevent youthful offenders from continuing their involvement in criminal conduct after the expiration of their sentence. In the novelty of the treatment option made available, and the importance of the objective it was to serve, lies the purpose of subsection 5010(d)'s requirement that the court find `no benefit' before imposing a sentence other than one under 18 U.S.C. §§ 5010(b) or (c).
"... The requirement of the `no benefit' finding was designed to insure that the sentencing judge exercised his discretion in choosing not to commit a youth offender to treatment under the Act. Such a finding would make unmistakably clear that the sentencing judge was not only aware of the existence of the new Act, but also knew that the youth offender before him was eligible because of his age for the treatment it provided to accomplish its important purpose." Id. at 442, 94 S.Ct. at 3052.
Clearly, the purpose for the rule was not to create a new right. The right to be considered for sentencing under the Youth Corrections Act existed prior to Dorszynski; all the latter requires is "an expression that makes clear that the sentencing judge considered the alternative of sentencing under the Act and decided that the youth offender would not derive benefit from treatment under the Act." Id. at 444, 94 S.Ct. at 3053.
The remaining factors  reliance and the administration of justice  are significant "only when the purpose of the rule in question did not clearly favor either retroactivity or prospectivity." Desist v. United States, 1969, 394 U.S. 244, 251, 89 S.Ct. 1030, 1035, 22 L.Ed.2d 248.
The Supreme Court in Dorszynski changed what had previously been the rule in a majority of the circuits which had passed on the question of the findings required by the Youth Corrections Act. Williams v. United States, 3 Cir. 1973, 476 F.2d 970; United States v. Bamberger, 3 Cir. 1972, 456 F.2d 1119, cert. denied, 1973, 413 U.S. 919, 93 S.Ct. 3067, 37 L.Ed.2d 1040; Cox v. United States, 4 Cir., 473 F.2d 334 (en banc), cert. denied, 1973, 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116; United States v. Jarratt, 9 Cir. 1972, 471 F.2d 226, cert. denied, 1973, 411 U.S. 969, 93 S.Ct. 2761, 36 L.Ed.2d 691; United States v. Dorszynski, 7 Cir. 1973, 484 F.2d 849, rev'd, 1974, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855. Contra, United States v. Coefield, 1973, 155 U.S.App.D.C. 205, 476 F.2d 1152 (en banc); United States v. Kaylor, 2 Cir. 1974, 491 F.2d 1133; Brooks v. United States, 6 Cir. 1974, 497 F.2d 1059. And in this Circuit, sentencing "judges were bound by no requirement that they articulate their reasons." Michigan, supra, 412 U.S. at 55, 93 S.Ct. at 1971; accord, Williams v. United States, supra. All that was previously required is that the record as a whole either explicitly or implicitly show the finding to have been made. Williams, supra, 476 F.2d at 971. As in Michigan, under these circumstances, judicial reliance on the prior rule of law was certainly justifiable.
If reliance on the trial record to supply the "no benefit" showing was justifiable under the prior case law, it would be fair to assume that many judges did not always make the affirmative articulation Dorszynski now requires. Therefore, it can be postulated that the potential interference with the administration of justice would be substantial if Dorszynski were applied retroactively. Michigan, supra. Moreover, *787 in order to comply now with Dorszynski, a sentencing "judge  assuming he is still on the bench or otherwise available  would be required to make a factual determination as to reasons for sentences he may have meted out years in the past." Michigan, supra, 412 U.S. at 56, 93 S.Ct. at 1971. This would present serious difficulties, a burden not necessary to effectuate the purposes underlying Dorszynski.
In conclusion, Dorszynski does not support the retroactive application of the explicit "no benefit" requirement.
The foregoing will constitute the court's findings of fact and conclusions of law.
The petition for a writ of error coram nobis will be denied.
NOTES
[1] There are some instances where conduct is punishable by a summary military proceeding which does not approach the seriousness of a court-martial in terms of imposable sanctions. More an administrative proceeding than a trial, see Parker v. Levy, 1974, 417 U.S. 733, 750-751, 94 S.Ct. 2547, 41 L.Ed.2d 439, we do not decide the question of whether this proceeding might in some instances be preferable to a trial. Petitioner's conduct does not fall within the ambit of activities the military regulates in this manner. See Hagarty v. United States, 1971, 449 F.2d 352, 358, 196 Ct.Cl. 66. Moreover, even if it were such an appropriate case, it would be the military and not petitioner who would have standing to complain. Harris v. Hunter, 10 Cir. 1948, 170 F.2d 552; Rawls v. United States, 10 Cir., 166 F.2d 532, cert. denied, 1948, 334 U.S. 848, 68 S.Ct. 1498, 92 L.Ed. 1771.
[2] In one of the last cases decided prior to the Supreme Court's ruling in Dorszynski, the Court of Appeals for the Second Circuit held that the type of explicit "no benefit" finding it was, the day of that decision, mandating would be required only prospectively. United States v. Kaylor, 2 Cir. 1974, 491 F.2d 1133 (en banc).
[3] It has been held that certain constitutional decisions merit retroactive effect without regard to this trifurcated test  those where the "major purpose of the new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials." Williams v. United States, 1971, 401 U.S. 646, 653, 91 S.Ct. 1148, 1153, 28 L.Ed. 2d 388, e. g., Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (right to counsel at trial). This is not such a case.