**UNITED STATES of America**

v.

**Walter S. BRACKETT, Appellant.**

**No. 75–1495.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 17, 1976.

Decided July 18, 1977.

---

7. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

Larry P. Ellsworth, Washington, D.C. (appointed by this court), for appellant.

Mark H. Tuohey, III, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., and John A. Terry, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges, sitting en banc.

Opinion for the court by Circuit Judge McGOWAN, in which Circuit Judges WRIGHT, TAMM, LEVENTHAL, and WILKEY join.

Separate concurring opinion by Circuit Judge MacKINNON, in which Circuit Judge ROBB joins.

Dissenting opinion by Chief Judge BAZELON, in which Circuit Judge ROBINSON joins.

McGOWAN, Circuit Judge:

In this appeal from the denial by the District Court of appellant's motion for collateral relief under 28 U.S.C. § 2255, the court *en banc* addresses the single issue of the retrospective reach of *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974).

I

In 1960 appellant, then an inmate of the National Training School for Boys, assaulted a guard in an attempt to escape, and was indicted for first degree murder. Juvenile Court jurisdiction was waived, and appellant pleaded guilty in the District Court to manslaughter. On March 10, 1961, he came before the court for sentencing. Since he was then 15 years of age and therefore eligible for sentencing under the Federal Youth Corrections Act, 18 U.S.C. § 5010, his counsel requested that he be considered for sentencing under that statute. After observing that youth "is not a mitigating circumstance" so far as the crime in question was concerned, and that appellant and his co-defendant were "really murderers" who had been allowed to plead guilty to a lesser charge, and who had prior bad records, the judge denied counsel's request in these terms:

Now, obviously this is not a case for the Youth Corrections Act, both because of the nature of the offense and the nature of the prior records of these defendants. The court is more interested in the fate that befell the guard than it is in the future of these two boys.

\*　　\*　　\*　　·　\*　　\*　　\*

Now, Brackett has shown vicious tendencies. In addition to plotting the escape plan involved in this case, after he pleaded guilty he tried to escape from the

Marshal's van. He needs incarceration in a maximum security institution.

An adult sentence of 5 to 15 years was thereupon imposed; and no appeal was taken.

On December 10, 1969, appellant filed in the District Court a *pro se* motion under § 2255. Although counsel was appointed for him, no action of any kind appears to have been taken until 1974 when appellant *pro se* filed a second § 2255 motion in this court. That was returned to appellant with notification that the District Court was the proper place for filing. When he again submitted his motion to this court, it was referred to the District Court for disposition, where it was denied without a hearing as raising no meritorious issue. A division of this court affirmed without opinion.

Although a number of issues had been raised in the District Court and on appeal, appellant's petition for rehearing and suggestion for rehearing *en banc* asserted only that appellant had been improperly denied Youth Corrections Act treatment because there had been no express finding, as required by *Dorszynski*, that appellant would derive no benefit from such treatment. Because of our concern that, as alleged by appellant, divisions of this court may not have been applying *Dorszynski* uniformly, the appeal was placed *en banc*, as our order stated, "for the purpose of considering whether (*Dorszynski*) shall be applied retroactively . . . ."

## II

The requisite manner of implementation of § 5010(d) of the Youth Corrections Act had heavily engaged the attention of this court prior to *Dorszynski*. That section provides that an adult sentence may be imposed "[I]f the court shall find that the youth offender will not derive benefit from treatment" under the alternatives provided by the Act.[1] In *United States v. Waters*, 141 U.S.App.D.C. 289, 292, 437 F.2d 722, 725 (1970), we said that the sentencing judge's discretion to impose an adult penalty "is circumscribed by the findings of fact in the individual case which the District Judge is required to make *either explicitly or implicitly*." (Emphasis supplied). And this necessity of an affirmative finding of no benefit, albeit in either express or implied terms, was reasserted by this court in *United States v. Ward*, 147 U.S.App.D.C. 149, 454 F.2d 992 (1971).

In *United States v. Coefield*, 155 U.S. App.D.C. 205, 476 F.2d 1152 (1973), we examined the issue *en banc*. The result of that inquiry was a holding that the finding of no benefit must be explicit and not left to implication, together with the addition of a new requirement that the judge making such a finding must state the reasons which impelled him to do so. *Dorszynski* dispensed with this enlarged requirement of the articulation of reasons, but, as we had done in *Coefield*, held that the no-benefit finding must be explicit rather than implicit. In this latter regard, the Supreme

1. Those alternatives are three in number. One is probation (Section 5010(a) ). A second (Section 5010(b) ) *is commitment to the custody of* the Attorney General for treatment and supervision pursuant to the Act, in which event § 5017(c) provides that the defendant must be conditionally released under supervision within four years, and unconditionally discharged within six years. The third (Section 5010(c) ) is, upon a finding that maximum benefit from YCA treatment may not be derived within six years, *commitment to the custody of* the Attorney General for any further period otherwise authorized by law for the offense in question. In this third alternative, Section 5017(c) requires that there shall be conditional release under supervision not later than two years prior to expiration of the term imposed, with unconditional release possible within one year thereafter; and unconditional discharge in any event must occur on or before the expiration of the maximum sentence imposed, computed uninterruptedly from the date of conviction. Sections 5017(a) and (b) provide that any committed youth offender *may* be released at any time under supervision, and *may* be unconditionally discharged at the expiration of one year thereafter.

A youth offender is defined by the Act as a person under 22 years of age at the time of conviction. The Young Adult Offenders Act, 18 U.S.C. § 4209 (1970), provides that a defendant aged 22 to 26 may be sentenced under the Youth Corrections Act if "the court finds that there is reasonable grounds to believe that the defendant will benefit" therefrom.

Court stopped short of saying that the finding must track the statute *in haec verba*, but it did say (418 U.S. at p. 444, 94 S.Ct. at p. 3053) that the required quality of explicitness must be imparted by language "that makes clear the sentencing judge considered the alternative of sentencing under the Act and decided that the youth offender would not derive benefit from treatment under the Act."

When the present appeal was before a division of this court, the issue was joined in terms of whether the sentencing judge in fact met the standards subsequently set in *Dorszynski*. Appellant continues *en banc* to assert that the judge gave no consideration whatever to the possibility of affording appellant Youth Corrections Act treatment. This argument is not literally germane under the terms of our *en banc* grant, but the varying doctrinal development that has occurred over time in this court prompts us to take note of the situation as we see it.

The record reveals that the sentencing judge was clearly aware of the Youth Corrections Act and of appellant's eligibility as a matter of age for disposition under it. The comments made by him seem to us of such a nature as to constitute an implicit finding of no benefit within the meaning of the relevant statutory provision, and of our later interpretation of it in *Waters* and *Ward*.[2] They were not, in our view, adequate to meet the higher standards of explicitness prescribed by this Court in *Coefield*, and more importantly by the Supreme Court in *Dorszynski*. These premises are, thus, the point of departure for our consideration of the retroactivity issue framed by our *en banc* order.

### III

Aged 15 at the time he was sentenced, appellant is now 31. In the intervening years, the sentencing judge has died, and appellant has twice been released on parole by the federal authorities, but each parole was subsequently revoked for parole violation. Released again in 1975 to the custody of South Carolina, he is presently out on parole from a South Carolina sentence of ten years for a criminal violation in that state. In his brief *en banc*, appellant asserts that, in the "unique facts presented by this case," resentencing under the Youth Corrections Act could only take the form, not of exposure to rehabilitative supervision, but of a release from further obligation under his federal sentence. This, so it is said, flows from the fact that the maximum sentence that can be given under YCA equals the maximum adult sentence, and time on parole is credited even if parole was subsequently revoked. Appellant received the maximum adult sentence of 15 years, and he has already served more than 15 years if his time out on parole is credited, which it is not in respect of an adult sentence but is under a YCA sentence.

We do not pursue this question of the precise relief to which appellant might be entitled if a remand for YCA sentencing were to be ordered, except to remark that, as envisioned by appellant, it does not entail his involuntary subjection to the improving influences of the Youth Corrections Division. We think, rather, that the facts giving rise to the claim are significant only as they illuminate the policies relevant to retroactivity. Those policies have been identified by the Supreme Court as involving three factors: (1) the purpose to be served by the new standards, (2) the extent of reliance by public authorities on the old, and (3) the effect of retroactivity on the administration of justice. *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

The objective of the Supreme Court in its ruling in *Dorszynski* was to assure that the

---

**2.** The sentencing judge's extensive references to (i) the serious nature of the assault, (ii) the prior criminal involvement of appellant, and (iii) appellant's attempt to escape, are both relevant to, and supportive of, an implication that the court was asserting its conviction that appellant would not respond to YCA treatment and would only disrupt the program with no benefit to himself. The judge's further professions of a seeming unconcern with appellant's rehabilitation argue for a different interpretation of his ruling, but we do not find them, in the entire context, inconsistent with a no-benefit conclusion.

sentencing judge will give conscious consideration to YCA treatment for youthful offenders who might, because of the very fact of their youth, be saved from a life of crime by the youth-oriented treatment provided by Congress to this end in the YCA. Congress prescribed the age limits for that particularized rehabilitative effort. Appellant has long since exceeded them, as will have many, if not indeed most, others who collaterally challenge their sentences. This court confronted a similar problem in *Mordecai v. United States*, 137 U.S.App.D.C. 198, 421 F.2d 1133 (1969), *cert. denied*, 397 U.S. 977, 90 S.Ct. 1098, 25 L.Ed.2d 272 (1970). There we refused to give retroactive application to the holding in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), in a collateral attack by a prisoner who had not been afforded the hearing required by *Kent* before a juvenile offender is waived for adult trial. In doing so the court noted the fact that the defendant was no longer a juvenile, and that no remedy was currently available to tap the rehabilitative potential of youth, stating (137 U.S.App.D.C. at 203, 421 F.2d at 1138) that "even if nonpunitive rehabilitation in the juvenile process would have been the proper path in 1961, society can no longer offer what was then, rightly or wrongly, denied. . . ."

The reliance interest in these circumstances is perhaps of less significance, although it is likely that the sentencing judge's action in this instance was not out of keeping with what were considered to be a sentencing judge's responsibilities at the time this sentence was imposed, and indeed as they were later defined to be by this court in *Waters* and *Ward*. The statute in question had been on the books for 24 years before the Supreme Court authoritatively prescribed the manner of its implementation. The varying and, as it turned out, not wholly successful development of implementation doctrine in our own court demonstrates the several faces which the statutory language apparently presented to individual judges, especially those charged with the traditionally awesome responsibility of criminal sentencing.[3]

With respect to the effect upon the administration of justice, there are obvious problems in deciding anew the delicate question of susceptibility to YCA treatment many years—in this case, 16—after the initial sentence. Not infrequently, as here, the sentencing judge will no longer be available. The task of recreating the conditions under which the first sentence was imposed holds the threat of more administrative burdens on a criminal justice system that is already overloaded. And surely those charged with the intensely important work of trying to save truly youthful offenders from blighted lives will not be aided by the prospect of the appearance among their charges of persons who have matured beyond the statutory age limits in a criminal environment.[4]

There comes a time, in the criminal law as elsewhere, where the more remote past can not be set to rights in response to late-blooming legal doctrine, at least not without impairment of other vital interests. This is such a case, and because we believe it to be characteristic of those that will arise on collateral attack, we state our

---

**3.** Limitations on retroactivity are not, of course, confined to constitutional holdings. *See Halliday v. United States*, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969). In concluding not to give retroactive application to an interpretation by it of Rule 11, Fed.R.Crim.P., *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Court stated (394 U.S. at 832, 89 S.Ct. at 1499) that it approached the problem by reference to "the same criteria we have employed to determine whether constitutionally grounded decisions that depart from precedent should be applied." *And see* Judge Leventhal's useful discussion of the concept of reliance in his concurring opinion in *Mordecai, supra.*

**4.** As an appendix to his brief *en banc*, appellant has supplied some Administrative Office figures as indicating that the number of persons likely to benefit from full retroactivity for *Dorszynski* is not such as to create apprehensions about burdening the criminal justice system. The figures on their face are not impressively supportive of appellant's point, since they reveal very substantial numbers of defendants in the period from 1965 to 1972 receiving adult sentences despite their age eligibility for YCA. This presumably reflects the growing national concern about the participation by young people in serious crime.

judgment to be that the retrospective operation of *Dorszynski* shall, in respect of sentences imposed prior to the issuance of our decision in *Coefield*, be restricted to direct appeals arising therefrom.[5] This differentiation of direct appeals from collateral attacks is one that has heretofore been recognized by this court as justifiable in appropriate circumstances. *See Pendergrast v. United States*, 135 U.S.App.D.C. 20, 26, 416 F.2d 776, 782, *cert. denied*, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969), and cases therein cited. We think the circumstances presented by this record warrant its utilization in the area addressed today by this court en banc.[6]

The District Court is, accordingly, affirmed.

*It is so ordered.*

MacKINNON, Circuit Judge, concurring specially, in which ROBB, Circuit Judge joins:

I concur in the foregoing opinion except to the extent that it conflicts with the following. It is not my view that *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) requires an *explicit* finding of "no benefit" in all instances. In *Dorszynski*, the Chief Justice remarked that:

An *explicit* finding that petitioner would not have benefited from treatment under the Act would have removed all doubt concerning whether the enlarged discretion Congress provided to sentencing courts was indeed exercised.

418 U.S. at 444, 94 S.Ct. at 3053 (emphasis added). What evoked this observation was that the sentencing proceeding in *Dorszynski* presented a record in which it was unclear whether

the options of the Act were considered and rejected [or] whether . . . the court believed petitioner to be legally ineligible for treatment under the Act— which would be error—or whether, realizing he was eligible, nevertheless deliberately opted to sentence him as an adult.

**5.** We use *Coefield* as the measuring date for the reason that *Coefield* made it the law of this circuit that the no-benefit finding must be explicit. *Dorszynski* adopted the same rule; and its invalidation of *Coefield's* additional requirement of the statement of reasons has no bearing on the issue immediately before us. Appellant is, of course, not helped by *Coefield* because his sentence occurred 12 years earlier, and there was no direct appeal.

**6.** Coming down on the side of non-retroactivity in a 2255 case is the Tenth Circuit. *Jackson v. United States*, 510 F.2d 1335 (10th Cir. 1975). And, in another retroactivity context, see the apparently approving reference to *Jackson* in *Bailey v. Holley*, 530 F.2d 169, 173 (7th Cir. 1976). The Second Circuit, in its en banc pre-*Dorszynski* ruling like ours in *Coefield*, requiring both an explicit finding and a statement of reasons, expressly made that ruling non-retroactive. *United States v. Kaylor*, 491 F.2d 1133 (2nd Cir. 1973), vacated and remanded for reconsideration in the light of *Dorszynski*, *sub nomine United States v. Hopkins*, 418 U.S. 909, 94 S.Ct. 3201, 41 L.Ed.2d 1155 (1974). *See also Owens v. United States*, 383 F.Supp. 780 (M.D. Pa.1974), *aff'd* without opinion, 515 F.2d 507 (3rd Cir. 1974), *cert. denied*, 423 U.S. 996, 96 S.Ct. 425, 46 L.Ed.2d 370 (1975), in which the District Court, in a carefully considered opinion, held *Dorszynski* non-retroactive in the context of a 2255 motion.

Our limitation of the retroactivity of *Dorszynski* is concededly at odds with holdings in other circuits. The latest of these appears to be *McCray v. United States*, 542 F.2d 1246 (4th Cir. 1976). That case involved a collateral challenge under § 2255, but the court, in a one-page *per curiam*, took no note of this fact, and limited its discussion to the assertion that it had "consistently remanded similar cases," citing two of its prior cases, one of which was a direct appeal in which the prosecutor had sought the remand, *United States v. Bailey*, 509 F.2d 881, 883 (4 Cir. 1975), and the other, *United States v. Flebotte*, 503 F.2d 1057 (4 Cir. 1974), was a 2255 which was remanded for resentencing in a 2-paragraph *per curiam* citing *Droszynski* and a prior Fourth Circuit case, *United States v. Ashby*, 502 F.2d 1163 (table), from which, since there is no reported opinion, it is impossible to tell whether it involved direct appeal or 2255. The Eighth Circuit is also to the contrary. *See Brager v. United States*, 527 F.2d 895 (1975), which devotes most of its brief discussion to describing the findings which on remand will warrant dismissal of post-conviction applications. *See also Belgarde v. United States*, 503 F.2d 1054 (9th Cir. 1974), and *Hoyt v. United States*, 502 F.2d 562 (5th Cir. 1974), both of which are very brief *per curiam* dispositions.

418 U.S. at 444, 94 S.Ct. at 3053. It was in such circumstances that *Dorszynski* pointed out that an explicit finding of "no benefit" would have resolved that ambiguity in the record.

Elsewhere in the opinion it is stated: *Once it is made clear that the sentencing judge has considered the option of treatment under the Act and rejected it, however, no appellate review is warranted.*[1]

The question whether the finding of "no benefit" must be explicit or whether it may be implicit in the record of a particular case is answered by the manifest desire of Congress to assure that treatment under the Act be considered by the court as one option whenever the youth offender is eligible for it. If the finding may be implied from the record, appellate courts must go on to determine what constitutes a sufficient showing of the requisite implication. To hold that a "no benefit" finding is implicit each time a sentence under the Act is not chosen would render § 5010(d) nugatory; to hold that something more is necessary to support the inference that must be found in the record would create an *ad hoc* rule. Appellate courts should not be subject to the burden of case-by-case examination of the record to make sure that the sentencing judge considered the treatment option made available by the Act.[2] *Literal compliance* with the Act can be satisfied by *any expression* that makes clear the sentencing judge considered the alternative of sentencing under the Act and decided that the youth offender would not derive benefit from treatment under the Act.

418 U.S. at 443–44, 94 S.Ct. at 3053 (emphasis added).

The Supreme Court thus states that literal compliance with the Act is satisfied if the trial court at the time of sentencing indicates by "any expression" that it: (1) considered the alternative of sentencing under the Act and (2) decided that the youth offender would not derive benefit from

treatment under the Act. Therefore, when the sentencing judge in this case said:

[O]bviously this is not a case for the Youth Corrections Act, both because of the nature of the offense and the nature of the prior records of these defendants.
. . .

it is clear that he did consider "the alternative of sentencing under the Act." 418 U.S. at 444, 94 S.Ct. at 3053. It is also clear that when the sentencing judge stated:

[Brackett] *needs* incarceration in a maximum security institution (emphasis added)

he was stating as clearly as one could state without echoing the exact "no benefit" language of the statute, that the court concluded Brackett would not derive benefit from treatment under the Act.

It is thus my opinion that the sentence imposed satisfied the Youth Act requirements and was not in conflict with the requirements of *Dorszynski*. There was nothing ambiguous in the sentencing by Judge Holtzoff, like the ambiguity in *Dorszynski*, that created any doubt that "the sentencing judge considered the treatment option made available by the Act" and that such "options of the Act were considered and rejected." Nor is there anything in Brackett's sentencing that creates any doubt that the sentencing judge had considered whether the defendant was "legally [eligible] for treatment under the Act."

The majority opinion does not disagree with this characterization of the trial judge's sentencing. The majority grants that (1) the trial judge made "comments" and "extensive references", and (2) that those statements made clear that "appellant would not respond to YCA treatment." (Maj. op. at —— of 185 U.S.App.D.C., at 504 of 567 F.2d & n. 2). *Dorszynski* requires no more.

This is not to say that an incantation of the "no benefit" finding would not more

---

**1.** In my view that is the factual situation here.

**2.** It is clear here that the sentencing judge did consider the sentencing options.

clearly have satisfied the statute. However, to my mind the judge was telling Brackett that he would *not* derive benefit from treatment under the Act when he told him he "*need*[*ed*] *incarceration* in a maximum security institution." The sentencing proceedings thus did not involve any indication that the probation officer or court were uncertain as to the eligibility of the defendant for a Youth Act sentence, such as was present in *Dorszynski.* In my view the sentencing proceeding satisfies all the requirements that *Dorszynski* outlines for a legal sentence, and thus it is not necessary for us to consider whether *Dorszynski* is retroactive.

As I read *Dorszynski* an implicit finding of "no benefit" satisfies the statute unless the basis for reaching the implication is ambiguous. There is no latent ambiguity in the instant sentencing proceeding.

BAZELON, Chief Judge, dissenting, in which ROBINSON, Circuit Judge joins:

Having decided that *Dorszynski* will not be applied retroactively to collateral attacks on sentences and that the pre-*Coefield* requirement of either an express or implied finding of "no benefit" applies to this case—views which I share—the majority affirms Brackett's sentence because it concludes that the sentencing judge here made the necessary implied finding. On this record, I find neither an express nor implied finding of "no benefit," and thus conclude that under either a pre- or post-*Dorszynski* standard the sentencing judge failed to give the required degree of attention to the possibility of a Youth Corrections Act sentence.

Before pronouncing sentence on Brackett and his codefendant, the district judge asked counsel for their comments. Brackett's attorney stressed his client's youth and urged YCA sentencing; his codefendant's attorney argued that his client's youth, low intelligence, and lesser role in the crime supported leniency and YCA sentencing. The court then expressed its views:

> The fact that these defendants are young is not a mitigating circumstance so far as their crime is concerned. They are really murderers. They were allowed to plead guilty to manslaughter, but their acts could have been held by the jury to constitute murder. They were prisoners in the National Training School for Boys, having been committed under the Federal Juvenile Delinquency Act for stealing automobiles. Each of them has a bad record before this present commitment. They were in a dormitory with 80 other prisoners. There was only one guard during the night. He sat inside, immediately inside the dormitory, at a desk. The door of the dormitory was locked.
>
> . . .
>
> These two defendants, in conjunction with the third defendant, Jankowski, plotted to overpower the officer, get the keys from him and make an escape during the night. Brackett, although he is the youngest of the three, was the ring leader and he is apparently the most vicious of the three.
>
> By a prearranged signal they got out of their beds and walked to the desk and Brackett grabbed a big heavy brass lamp and began to beat the guard over the head with that lamp and, in addition to that, used a big broom. McCracken, according to the evidence, participated in the beating by hitting the guard with his fist. The guard was screaming and pleading for help but Brackett, particularly, did not let up the beating.
>
> The guard was eventually found on the floor in a pool of blood. He was in a coma for a week and a three weeks later he died of this attack.
>
> Now, obviously this is not a case for the Youth Corrections Act, both because of the nature of the offense and the nature of the prior records of these defendants. *The Court is more interested in the fate that befell the guard than it is in the future of these two boys.*
>
> Now, if they have a spark of humanity—and every human being has; some have a greater spark and some a lesser, but everyone has—they will lie awake many a night in a feeling of remorse for what they have done, and if they have

any spark of humanity they will spend many an hour on their knees praying to God and imploring God to forgive them.

Now, Brackett has shown vicious tendencies. In addition to plotting the escape plan involved in this case, after he pleaded guilty he tried to escape from the Marshal's van. He needs incarceration in a maximum security institution. (Emphasis added.)

The court then gave Brackett the maximum adult sentence of five to fifteen years, with recommended commitment in a maximum security facility. Appellant was fifteen years old at the time.

I do not find in the sentencing judge's statement any conclusion, express or implied, that appellant would fail to benefit from Youth Corrections Act sentencing. The judge obviously was aware of this option, but his comments demonstrate that he ruled it out without regard to Brackett's rehabilitative potential under Youth Act treatment. He focused instead on the viciousness of the crime, frankly admitting that he was more concerned with the violence done to the victim than with the reformation of the defendants.[1]

Under either a pre- or post-*Dorszynski* standard, a judge must do more than indicate awareness that the Youth Corrections Act option exists. He must express his decision "that the youth offender would not derive benefit from treatment under the Act." *Dorszynski, supra,* at 444, 94 S.Ct. at 3053. Section 5010(d) of the Act requires that a judge make this finding before resorting to an adult sentence because Congress believed that the Youth Corrections Act program would be likely to "provide a better method for treating young offenders convicted in federal courts in that vulnera-

ble age bracket, to rehabilitate them and restore normal behavior patterns." *Dorszynski, supra,* at 433, 94 S.Ct. at 3048.

The majority's effort to recast the judge's discourse in our pre-*Coefield* doctrinal mold falls considerably wide of the mark. The most the majority can say is that some of his remarks are "supportive of [a no-benefit] implication" and that others, which concededly "argue for a different interpretation," assertedly are not "inconsistent with a non-benefit conclusion." Majority op. at —— of 185 U.S.App.D.C., at 504 of 567 F.2d n.2. Even assuming arguendo the validity of this analysis, however, it hardly bears out the thesis that the sentencing judge made an implied no-benefit finding within Section 5010(d) as construed in *Waters* and *Ward.* It does not suffice to merely wring some intimation of no-benefit from what the sentencing judge said; at the very least, the question in terms of those decisions is whether the implication is plain and unambiguous. In each of those cases, particular observations viewed in isolation indicated that no benefit from Youth Act treatment was expectable, but there were other observations casting doubt on that reading. *United States v. Waters,* 141 U.S.App.D.C. 289, 291–292, 437 F.2d 722, 725–726 (1970); *United States v. Ward,* 147 U.S.App.D.C. 149, 150–151, 152, 454 F.2d 992, 993–994, 995 (1971). *See also Dorszynski, supra,* 418 U.S. at 443–444, 94 S.Ct. 3042. In concluding that Section 5010(d) did not tolerate that sort of fuzziness, we held in effect that imprecise expressions could do service as implied no-benefit findings only when the message was clear.

Although the Supreme Court has held that a judge need not give reasons for his

---

1. The Youth Corrections Act does not exclude categories of youthful offenders from its coverage, neither those with long records nor perpetrators of vicious offenses nor murderers. These factors may be relevant to the determination of whether a youth will benefit from Youth Corrections Act treatment—either pro or con—but they cannot be relied on as rigid indicators. As the Second Circuit has stated, the sentencing judge should make "a careful appraisal of the variable components relevant

to the sentence upon an individual basis" rather than employing "a fixed and mechanical approach in imposing sentence." *United States v. Schwarz,* 500 F.2d 1350, 1352 (1974) (district judge's statements required vacation of adult sentence because they were susceptible to the interpretation that only ghetto youths are eligible for YCA treatment). *See also Dorszynski v. United States,* 418 U.S. at 450, 94 S.Ct. 3042 (Marshall, J., concurring).

finding of "no benefit,"[2] no one has yet suggested that a judge may impose an adult sentence for reasons other than the defendant's incapacity to be helped by Youth Act treatment. Because the sentencing judge's comments unmistakably show reliance on such impermissible reasons, I would reverse and remand to the District Court for determination of whether Brackett might have benefited from Youth Act treatment at the time of his original sentencing.[3]

---

2. *Dorszynski v. United States,* 418 U.S. 424, 441–42, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974).

3. If Brackett were found suitable for YCA treatment, he should be released from federal supervision stemming from this conviction because the YCA requires that a youth sentenced thereunder be discharged no later than "the expiration of the maximum sentence imposed, computed uninterruptedly from the date of conviction." 18 U.S.C. § 5017(d). *See* majority op. at —— of 185 U.S.App.D.C., at 504–505 of 567 F.2d. *Compare Dorszynski,* 418 U.S. at 429 n.6, 94 S.Ct. 3042.